## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CLYDE MOFFETT,                          :
AIS# 107666

                                        :

        Petitioner,

                                        :

v.                                          CIVIL ACTION NO. 05-0276-CG-D

                                        :

STEPHEN BULLARD,

                                        :

        Respondent.

## REPORT AND RECOMMENDATION

Clyde Moffett, a state prisoner currently in the custody of respondent, has petitioned this

Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner challenges the

validity of his October 1, 2002, conviction by a jury in the Circuit Court of Mobile County,

Alabama, for murder, for which he received a sentence of life imprisonment in the state

penitentiary without the possibility of parole pursuant to the Alabama Habitual Felony Offenders

Act.  (Doc. 1 at 3; Doc. 12, Ex. A, Vol. 1 at 4, 6).

This matter is now before the undersigned on petitioner's petition, respondent's answer,

briefs, responses, and exhibits filed by the parties, various state court briefs filed by the parties,

and opinions and orders of the state appellate courts.  Following a careful review of the records

and exhibits, the undersigned finds that there are sufficient facts and information upon which the

issues under consideration may be properly resolved.  Therefore, no evidentiary hearing is

required upon the issues.  See Keeney v. Tamayo-Reyes, 504 U.S. 1, 12 (1992).

## BACKGROUND FACTS

The Alabama Court of Criminal Appeals found the facts of this case to be as follows:[1]

On the evening of December 4, 2001, the victim, Broderick Gaines, asked an acquaintance of his, Terry Howard, to give him a ride to Gaines's stepmother's apartment in the Josephine Allen housing project in Mobile.  Sitting in the passenger seat of Howard's truck, Gaines directed Howard, who was unfamiliar with the area, to an apartment in the housing project and told him to come inside with him.  Although Howard did not know it at the time, the apartment was the residence of Gaines's onetime girlfriend, Kathy Munnerlyn.  Living with Munnerlyn at the time was the appellant Moffett.  Testimony indicated, however, that Munnerlyn and Gaines continued to see each other after Munnerlyn took up with Moffett and that the two would sometimes meet surreptitiously at Gaines's stepmother's apartment, which was only a short distance from the apartment that Munnerlyn lived in with Moffett.[2]

After stopping in front of Munnerlyn's residence, Howard followed Gaines through the open front door of the apartment, and waited near the door as Gaines walked to the kitchen area, where Moffett, Ruth Evans, and Evans's boyfriend, Kinnard Moore, were drinking alcohol.  Munnerlyn was upstairs in the apartment at the time.  Gaines, who had already been drinking earlier that evening, asked Moffett for a drink.  Moffett, who was unaware of Gaines's relationship with Munnerlyn, told Gaines that he did not know him and that he and Howard "need[ed] to get the hell out."  (R. 77) Hearing this and fearing trouble, Howard turned and left, walking out to the sidewalk in front of the building.  Gaines, however, did not leave, but instead continued to ask Moffett for a drink.  Moffett again told Gaines to leave and demanded to know who it was that Gaines knew in the apartment.  Either Gaines or Ruth Evans then told Moffett that Gaines knew Munnerlyn, at which point Moffett angrily called for Munnerlyn to come downstairs.

When Munnerlyn came downstairs, she initially denied any connection to Gaines, and told Moffett that Gaines was Ruth Evans's boyfriend.  Evans,

---

[1] The Antiterrorism and Effective Death Penalty Act (AEDPA) directs that a presumption of correctness be afforded factual findings of state courts, "which may be rebutted only by clear and convincing evidence."  Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1) and Sumner v. Mata, 449 U.S. 539, 547 (1981)).

[2] Several witnesses testified that Munnerlyn and Gaines were still seeing each other at the time of the incident.  Munnerlyn, however, maintained that their relationship had ended by that time.

however, did not back up this story, and Munnerlyn was forced to admit that she knew Gaines, whereupon Moffett struck Munnerlyn in the face. Howard, who had witnessed much of these events from the sidewalk in front of the apartment (the front door had remained open), got back in his truck. After Moffett struck Munnerlyn, Gaines left the apartment and rejoined Howard in the truck, telling Howard that Moffett was "crazy." (R. 79.) Gaines told Howard to drive a short distance up the street to the apartment belonging to Gaines's stepmother, Lillie Thorton - - where Howard originally believed he was taking Gaines. Testimony indicated that Munnerlyn's apartment and Thorton's apartment were separated by only four or five other units in the housing project.

When Howard stopped his truck in front of Thorton's apartment, Gaines got out and went to the front door and knocked. Howard also exited the truck, but remained near it as Gaines stepped inside the apartment to talk to Thorton. As he stood by his truck, Howard heard the sound of gunshots being fired from up the street. Howard turned to see Moffett walking toward his truck. At about the same time, Howard also saw Gaines returning to the truck. According to Howard, Moffett walked up to the truck and told him not to bring Gaines back to his house or he would shoot them both. Howard then got back in the truck, where, by that time, Gaines had returned to the passenger's seat. Howard testified that before he could start the truck, Moffett went around to the passenger side, opened the door, and told Gaines, "[R]emember, don't bring your butt back over here, and ... by the way, take this with you." (R. 82.) Howard stated that Moffett then pointed a pistol at Gaines and shot him. Howard rushed Gaines to the hospital, where he later died. An autopsy revealed that Gaines had been shot in the abdomen and in the thigh and that he bled to death from his wounds. A .22 caliber bullet was recovered from his body.

Kathy Munnerlyn testified that after Gaines left her apartment, Moffett took a .22 caliber handgun belonging to her and walked out after Gaines. Shortly thereafter, she said, she heard several gunshots fired down the street. According to Munnerlyn, Moffett returned to her apartment and told her, "[I]t's not over." (R. 185.) She stated that Moffett then left and never came back. Moffett was apprehended nearly four months later, at Ruth Evans's residence.

Tueyeattia Smith, who lived two doors down from Kathy Munnerlyn (almost equidistance between Munnerlyn's apartment and Lillie Thorton's apartment), testified that on the night of the incident (much of which, she said, she witnessed from her front porch), she saw Gaines leave Munnerlyn's apartment and go to Thorton's place. Smith stated that she then saw Moffett walk across her yard toward Gaines, firing a gun as he approached Gaines, who by that time, according to Smith, was running back to Howard's truck. Smith stated that after Gaines got in the truck with Howard, she saw Moffett open the passenger-side door and shoot into the vehicle at Gaines.

Nicole Witherspoon, who lived with her aunt, Lillie Thorton, testified that she was home washing dishes on the night of the incident. Witherspoon stated that Gaines came to the apartment and spoke briefly with Thorton and then left. Just after Gaines left, she said, she heard several gunshots being fired outside. Witherspoon stated that she then stepped onto the front porch of the apartment and saw Gaines run to Howard's truck and get in. Witherspoon stated that she then saw Moffett open the passenger-side door of the truck and shoot into the vehicle at Gaines.

Lillie Thorton, Gaines's stepmother, testified that she did not witness the shooting, but stated that after Gaines left her apartment, she heard five gunshots outside, then two more.

A forensic toxicologist testified that Gaines's blood was analyzed post-mortem for drugs and alcohol. Gaines's blood-alcohol level was found to be about .10 percent, while the screen was negative for other drugs.

There was no evidence presented indicating that Gaines was armed on the night of the shooting. Terry Howard testified that he had a pistol in the driver-side door of his truck, but that Gaines did not know about the gun. No evidence was presented indicating that either Howard or Gaines brandished the gun, or that Moffett was aware that Howard had the gun in his truck. Moffett did not testify at trial.

(Doc. 11, Ex. D at 1-4).

Petitioner was indicted by the Mobile County Grand Jury on July 19, 2002, and charged with murder. (Doc. 12, Ex. A, Vol. 1 at 5). Petitioner entered a plea of not guilty to the charge, and, following a jury trial in the Circuit Court of Mobile County, Alabama, petitioner was convicted on October 1, 2002, of murder. (Doc.1 at 3; Doc. 12, Ex. A, Vol. 1 at 2, 3, 6). Petitioner was sentenced as a habitual felony offender to life without the possibility of parole. (Doc. 1 at 3; Doc. 12, Ex. A, Vol. 2 at 15). Petitioner was represented at trial by attorney James Brandyburg. (Doc. 1 at 10).

Petitioner appealed his conviction to the Alabama Court of Criminal Appeals and raised the following issue: that the trial court improperly refused to instruct the jury on self-defense.

4

(Doc. 11, Ex. B at 3; Ex. D at 1).  The court affirmed petitioner's conviction by memorandum opinion on May 23, 2003.  (Doc. 11, Ex. D).  Attorney Arthur J. Madden, III, represented petitioner on appeal.  (Doc. 1 at 10; Doc. 11, Ex. B).  Petitioner then filed a petition for a writ of certiorari to the Alabama Supreme Court, which that court denied without opinion on September 19, 2003.  (Doc. 11, Ex. E).

On August 25, 2004, petitioner filed a petition for post-conviction relief, *pro se*, pursuant to Rule 32 of the Alabama Rules of Criminal Procedure.  (Doc. 1 at 4; Doc. 11, Ex. F at 10-75). In this petition, petitioner raised the following issues: (1) that appellate counsel failed to argue on appeal that petitioner's trial counsel was ineffective in allegedly failing to argue that the jury venire was not properly sworn prior to the voir dire examination; (2) that petitioner's appellate counsel was ineffective for allegedly failing to raise ineffective assistance of trial counsel as an issue on appeal because of trial counsel's failure to object to the indictment on the grounds that it was improperly amended to add the name of Mikal Malik; (3) that the trial court lacked jurisdiction to render judgment and to impose his sentence under the Alabama Habitual Felony Offenders Act because, according to petitioner, the State failed to present certified copies of the convictions used to enhance his sentence; (4) that his due process rights were violated because, according to petitioner, the pre-sentence investigation report filed by the State was improperly prepared and contained out-of-date information; (5) that petitioner's trial counsel was ineffective for allegedly failing to introduce evidence supporting a theory of self-defense; (6) that his trial counsel was ineffective for allegedly failing to request a jury charge on threat for the purpose of establishing a defense of self-defense; and (7) that petitioner's appellate counsel was ineffective for allegedly failing to raise a claim of ineffective assistance of trial counsel for failing to object

5

to the pre-sentence investigation report.  (Doc. 10 at 3-4; Doc. 11, Ex. F at 19-40; Ex. I at 1-2).

On August 26, 2004, the trial court denied petitioner's Rule 32 petition, and petitioner appealed to the Alabama Court of Criminal Appeals.  (Doc. 11, Ex. F at 76).  On January 21, 2005, the Alabama Court of Criminal Appeals affirmed, by memorandum opinion, the judgment of the trial court denying petitioner's Rule 32 petition for post-conviction relief.  (Doc. 11, Ex. I).  Petitioner's application for rehearing was overruled on February 11, 2005, and his application for certiorari review was denied on April 8, 2005.  (Doc. 10 at 4).  A certificate of final judgment was issued on petitioner's Rule 32 appeal on April 8, 2005.  (Doc. 11, Ex. J).

On May 11, 2005, petitioner filed the instant petition for a writ of habeas corpus, setting forth eight claims in support of his request for habeas relief: (1) that the trial court erred in refusing his request that the jury be charged on self-defense; (2) that appellate counsel was ineffective for his failure to raise ineffective assistance of petitioner's trial counsel for his failure to object to the jury venire allegedly not being given the required oath prior to voir dire examination; (3) that appellate counsel was ineffective for his failure to raise ineffective assistance of trial counsel for his failure to properly preserve for review the claim that the indictment was amended to add appellant's name; (4) that the trial court was without jurisdiction to enhance petitioner's sentence to life without parole under the Alabama Habitual Felony Offenders Act where the State did not present and/or admit certified copies of prior convictions into evidence at petitioner's sentencing; (5) that petitioner was deprived of due process as a result of an improperly prepared pre-sentence investigation report which included outdated information; (6) that trial counsel was ineffective for failing to offer evidence to establish the defense of self-defense; (7) that appellate counsel was ineffective for not asserting ineffective

assistance of counsel based on trial counsel's alleged failure to object to the allegedly improper

pre-sentence report; and (8) that trial counsel was ineffective for failing to request a charge on

threat for the purpose of establishing the defense of self-defense.  (Doc. 1 at 13-14).  The Court

will consider each of these claims in turn.

## DISCUSSION

As outlined above, petitioner has filed a petition for a writ of habeas corpus under 28

U.S.C. § 2254, raising eight claims.[3]  For the reasons set forth below, the Court finds that

petitioner is not entitled to habeas relief on the basis of any of these claims.

## Adjudication on the Merits

The record reflects that petitioner presented each of his eight habeas claims to the state

courts either on direct appeal or in his Rule 32 petition for postconviction relief, and that the

courts adjudicated Claims 1, 2, 3, 6, 7 and 8 on the merits.[4]  The following provision thus

applies to petitioner's claims.

28 U.S.C. § 2254(d) provides that:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the

---

[3]Section 2254(b)(1) provides that a prisoner in state custody shall not be granted a writ of habeas corpus unless the prisoner "has exhausted the remedies available in the courts of the State."  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  Based upon the Court's review of the record, it appears that petitioner has exhausted all eight of his claims in the state courts, as the State acknowledged in its answer (doc. 10).

[4] As discussed more fully *infra*, petitioner's Claims 4 and 5 were determined to be procedurally defaulted.

claim–

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

Id.  Petitioner filed his habeas petition after the enactment of the AEDPA; therefore, subsection

(d) applies to his petition.

In Williams v. Taylor, 529 U.S. 362, 412 (2000), Justice O'Connor, writing for a

majority of the Court, recognized that § 2254(d)(1) places a new constraint on the power of a

federal habeas court to grant a state prisoner's application for a writ of habeas corpus with

respect to claims adjudicated on the merits, as a writ may issue only if the state court

adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law,

as determined by the Supreme Court of the United States," or (2) "involved an unreasonable

application of . . . clearly established Federal law, as determined by the Supreme Court of the

United States."

A state-court decision is contrary to the Supreme Court's clearly
established precedent (1) if the state court applies a rule that contradicts the
governing law as set forth in Supreme Court case law, or (2) if the state court
confronts a set of facts that are materially indistinguishable from those in a
decision of the Supreme Court and nevertheless arrives at a result different from
Supreme Court precedent.  See Williams v. Taylor, 529 U.S. 362, 120 S. Ct.
1495, 1519-20, 146 L. Ed. 2d 389 (2000).

A state court decision involves an unreasonable application of Supreme
Court precedent "if the state court identifies the correct governing legal rule from
[Supreme Court] cases but unreasonably applies it to the facts of the particular
state prisoner's case." Williams, 120 S. Ct. at 1520.  In addition, a state court
decision involves an unreasonable application of Supreme Court precedent "if the
state court either unreasonably extends a legal principle from [Supreme Court]

8

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a state court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).  A review of the file in this action indicates that petitioner's claims have each been raised and decided on the merits in the state courts, therefore this Court will review petitioner's habeas claims under the standard of 28 U.S.C. § 2254(d).

I.     Claim 1.

Petitioner argues first in his petition that he is entitled to relief under § 2254 on the ground that the trial court erred in refusing his request that the jury be charged on the doctrine of self-defense.  (Doc. 1 at 13).  Respondent argues that the decision of the state court on this issue has not resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor was the decision based on an unreasonable determination of the facts.  (Doc. 10 at 9).  The Court agrees.

Petitioner presented this same argument to the Alabama Court of Criminal Appeals in his direct appeal, and, in its memorandum opinion affirming petitioner's conviction, the court stated:

> Moffett contends that he was entitled to have the trial court charge the jury on
> self-defense.  "If there is any evidence, however slight, tending to support that the
> defendant acted in self-defense, the issue of self-defense should be submitted to
> the jury."  Ex parte Pettaway, 594 So. 2d 1196, 1200 (Ala. 1991), quoting King v.
> State, 478 So. 2d 318, 319 (Ala. Crim. App. 1985).  "An accused is entitled to the
> charge of self-defense whenever some evidence of self-defense has been offered
> and some testimony of a threat and its attempted execution has been presented."
> Nelson v. State, 397 So. 2d 198, 199 (Ala. Crim. App. 1981), citing Ex parte
> Traweek, 380 So. 2d 958 (Ala. 1979).  Furthermore, to be entitled to a jury charge
> on self-defense, there must be some evidence tending to show that the defendant
> was justified in his actions.  Austin v. State, 555 So. 2d 324, 329 (Ala. Crim. App.

9

1989).  "To justify conduct through a claim of self-defense, the accused must neither provoke nor encourage the difficulty."  Finchum v. State, 461 So. 2d 37, 39 (Ala. Crim. App. 1984) (citations omitted).  "One who claims justification in the use of force must not have brought on the necessity of using it; he must have been entirely free from fault."  Commentary to § 13A-3-23, Ala. Code 1975.  "It is not an invasion of the province of the jury for the court to determine whether, under the facts proven, the defendant may set up self-defense."  Raines v. State, 455 So. 2d 967, 974 (Ala. Crim. App. 1984).

Here, Moffett offered no evidence and presented no theory at trial that he shot Gaines in self-defense.  There was no evidence of a threat, or of an attempt of its execution, by Gaines against Moffett.  Although Moffett, in his brief, points to the fact that Terry Howard had a gun in his truck at the time of the incident, the evidence indicated that the gun was in the driver-side door of the vehicle and that it was never used or brandished by Howard or Gaines.  Moreover, there was no evidence that Gaines even knew about the gun – just as there was no evidence that Moffett was aware of the gun's existence when firing into the truck at Gaines.

The evidence also established that Moffett was not "entirely free from fault."  According to the only testimony on the issue, Moffett was the initial (and, indeed, the only) aggressor.  Although Gaines's actions at Munnerlyn's apartment may have been provocative, they were neither violent nor threatening.  Gaines was unarmed and had left Munnerlyn's apartment before the shooting.  Moffett, apparently in a jealous rage after learning of Munnerlyn's relationship with Gaines, pursued Gaines down the street, firing his pistol as he approached Gaines.  He then walked to the passenger-side of the truck where Gaines was seated, opened the door, and fired into the vehicle at Gaines.  As the State asserts in its brief, Moffett "escalated the confrontation that night into violence by pursuing and firing on an unarmed man."  (State's brief at p. 11.)

Moffett's counsel on appeal attempts, valiantly, to hang an argument for the self-defense instruction on testimony by Gaines's stepmother, Lillie Thorton, that, during the incident, Thorton's niece Nicole Witherspoon, who had stepped onto the front porch of Thorton's apartment after hearing the initial gunshots, came back inside and told Thorton that "Broderick [Gaines] was shooting at him or Lee [Moffett] was shooting at Broderick."  (R. 127.)  Counsel argues that this was some slight evidence supporting a claim that Moffett shot Gaines in self-defense.  However, elsewhere in her testimony, Thorton plainly stated that Witherspoon had told her that she saw Moffett shooting into the truck at Gaines and that this was what she had told Thorton after coming back inside the apartment.

The evidence provided nothing to indicate that Gaines was using or was

10

about to use unjustified physical force against Moffett and failed entirely to
support a claim of self-defense.  Therefore, the trial court properly refused to
instruct the jury on self-defense.  See Washington v. State, 642 So. 2d 531, 532
(Ala. Crim. App. 1994).  "A court should not instruct on self-defense when there
is no evidence to sustain the plea."  Raines, supra, 455 So. 2d at 974.

(Doc. 11, Ex. D at 4-6).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of

Criminal Appeals that the trial court did not err in failing to instruct the jury on self-defense,

petitioner's theory of the case.  Although petitioner chose not to testify at his trial, the record

reflects that evidence was presented concerning the existence of a gun in Terry Howard's

vehicle, but that evidence further reflected that petitioner, as well as the victim, knew nothing of

the existence of the gun at the time of the incident.  Further, all testimony at trial indicated that

the victim never brandished a gun on the evening of the incident. Based upon a thorough review

of the record, just as the Alabama Court of Appeals determined, petitioner was clearly not

entitled to a jury charge of self-defense.  Therefore, petitioner has failed to establish error on the

part of the trial court with respect to habeas claim 1.

II.  Claims 2 - 3 and 6 - 8.

Petitioner's habeas claims 2, 3, 6, 7, and 8 all concern allegations of ineffective

assistance of appellate and trial counsel.  In claims 2, 3, and 7, petitioner contends that he is

entitled to relief under § 2254 on the ground that his appellate counsel erred in failing to assert

the claim of ineffective assistance of trial counsel because of the following reasons: (claim 2)

trial counsel's failure to object and preserve for appellate review the claim that the jury venire

was not given the required oath before their voir dire examination; (claim 3) trial counsel's

failure to properly preserve for appellate review the claim that the indictment was amended to

add appellant's name; and (claim 7) trial counsel's failure to object to the introduction of the

presentence report that was allegedly improperly prepared, out-dated, and insufficient, thus

violating petitioner's due process rights. (Doc. 1 at 13-14).  In claims 6 and 8, petitioner claims

that he is entitled to habeas relief on the ground that his trial counsel failed to offer evidence of

threats made by the victim for the purpose of establishing self-defense and on the ground that his

trial counsel failed to request a jury charge on threat for the purpose of establishing a defense of

self-defense.   (Id.).

     Petitioner has previously raised these issues in his petition for post conviction relief

pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. Respondent again argues that

the decision of the state court on these issues has not resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established federal law, nor was the decision

based on an unreasonable determination of the facts.  (Doc. 10 at 9).  Again, the Court agrees.

     As noted, petitioner presented these same arguments to the Alabama Court of Criminal

Appeals in his Rule 32 proceedings, and, in its memorandum opinion denying petitioner's

request for Rule 32 relief on these claims, the court stated:

> On appeal, Moffett reasserts each of the claims raised in his Rule 32
> petition.  Because Moffett's claims were either procedurally barred or without
> merit, the trial court did not err in dismissing the petition.  Rule 32.7(d), Ala. R.
> Crim. P.; Cogman v. State, 852 So. 2d 191, 193 (Ala. Crim. App. 2002).

> Moffett argues that the trial court erred in rejecting his claims of
> ineffective assistance of trial and appellate counsel.  Moffett presents five
> instances of alleged ineffective representation.  Although the trial court made
> specific findings concerning only two of Moffett's claims of ineffective counsel,
> it appears that none of the claims had merit.  Therefore, no basis for relief exists
> as to Moffett's claim of ineffective representation.

> ...

"[T]o prevail on an ineffective assistance of counsel claim, a defendant must meet a two-pronged test set out by <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

"'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.'"

<u>Id.</u> at 687, 104 S. Ct. at 2064.

...

Here, Moffett has failed to meet the two-prong test required by <u>Strickland</u> to prevail on an ineffective assistance of counsel claim. Moffett has failed to prove that his counsel's performance was deficient as well as failing to prove how that alleged deficiency prejudiced his defense. With the exception of the two claims specifically addressed by the trial court,[5] Moffett's claims of ineffective assistance of counsel are nothing more than bare allegations and the trial court was correct in summarily dismissing them via Rule 32.7(d), Ala. R. Crim. P.

(Doc. 11, Ex. I at 2-5).

As noted by the Alabama Court of Criminal Appeals, to prevail on any of his claims of

ineffective assistance of counsel, petitioner bears the burden of establishing by a preponderance

of the evidence that his trial and/or appellate counsel's performance was deficient and that he

---

[5]The court found Moffett's claim that his trial counsel was ineffective because counsel failed to object to the jury not being sworn was specifically refuted by the trial transcript. The court also rejected Moffett's claim that his trial counsel was ineffective because counsel failed to object to the inclusion of Moffett's alias in the indictment.

was actually prejudiced by the inadequate performance.  Strickland v. Washington, 466 U.S. 668 (1984).  Successfully proving a claim of ineffective assistance of counsel is very difficult, and it has been noted that "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Van Poyck v. Florida Dep't of Corrections, 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)).

Having reviewed the record in this matter, the Court finds that the Alabama Court of Criminal Appeals' adjudication of these issues was not contrary to nor involves an unreasonable application of clearly established Federal law as determined by the United States Supreme Court. Assuming, *arguendo*, that trial counsel and/or appellate counsel erred in any manner, petitioner has failed to show that the error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 687, 694.  Numerous eyewitnesses testified to the incidents surrounding the shooting of the victim by petitioner, as well as the shooting itself.  (Doc. 12, Ex. A, Vol. 1 at R-82-R-83, R-114, R-118, R-138-139, R-153; Vol. 2 at R-178, R-182-R-184).  Petitioner has made weak attempts to assert a theory of self-defense, but as discussed in detail above, no evidence was presented which would support this theory in any way.  Therefore, the Court concludes, as did the Alabama Court of Criminal Appeals, that petitioner has failed to establish ineffective assistance of trial or appellate counsel with respect to habeas claims 2, 3, 6, 7, and 8.

**Procedural Default**

III.  Claims 4 & 5

14

Petitioner's two remaining claims are procedurally barred.  In habeas claim 4, petitioner claims that the trial court was without jurisdiction to enhance petitioner's sentence to life without the possibility of parole under the Alabama Habitual Offenders Felony Act when the state failed to present and/or admit certified copies of prior convictions to be accepted into evidence by the trial court at sentencing. (Doc. 1 at 13).  Petitioner presented this same argument to the Alabama Court of Criminal Appeals in his Rule 32 proceedings, and, in its memorandum opinion denying petitioner's request for Rule 32 relief on this claim, the court stated:

> Moffett's claim that the State failed to properly prove his prior convictions in enhancing his sentence also fails.  This Court has held that an illegal-sentence claim based on the State's failure to prove a defendant's prior felony convictions by use of certified copies is a non-jurisdictional claim.  See Brooks v. State, 845 So. 2d 849, 850 (Ala. Crim. App. 2002); Franks v. State, 819 So. 2d 106, 107 (Ala. Crim. App. 2001).  As such, Moffett's claim is subject to the procedural bars set forth in Rule 32, Ala. R. Crim. P., specifically, 32.2(a)(3) and 32.2(a)(5).

(Doc. 11, Ex. I at 5-6).

Likewise, in habeas claim 5, petitioner claims that he was deprived of due process because the pre-sentencing report was improperly prepared with outdated and false information. Petitioner presented this same argument to the Alabama Court of Criminal Appeals in his Rule 32 proceedings, and, in its memorandum opinion denying petitioner's request for Rule 32 relief on this claim, the court stated:

> Lastly, Moffett's claim that his due process rights were violated because, he says, that the pre-sentence investigation report filed by the State was improperly filed and contained outdated information is non-jurisdictional and subject to the procedural bars set forth in Rule 32.  Brown v. State, 724 So. 2d 50 (Ala. Crim. App. 1997).  As such, this claim could have been raised at trial or on appeal but was not.  Rule 32.2(a)(3) and (5), Ala. R. Crim. P.; Baker v. State, 819 So. 2d 87, 89 (Ala. Crim. App. 2001).

(Doc. 11, Ex. I at 6).

15

Before a federal court considers a habeas petition presented by a state prisoner, the court must determine whether the petitioner has properly presented the issues to the state courts first. In general, "[a] state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." Bailey v. Nagle, 172 F.3d 1299, 1302-1303 (11th Cir. 1999), citing Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506 (1977).

Procedural default can arise in two ways. "First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred," the federal court is required to "respect the state court's decision." Bailey, 172 F.3d at 1302. In Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553, 115 L. Ed. 2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." This rule applies whether the state law ground is procedural or substantive. Id. at 729, 111 S. Ct. at 2554. As such, "[t]he doctrine applies to bar federal habeas [review] when a state court decline[s] to address a petitioner's federal claims because the [petitioner fails] to meet a state procedural requirement." Id. at 729-30, 111 S. Ct. at 2554. Procedural default can also occur when a petitioner has failed to fully exhaust his state remedies and the time to do so has lapsed. O'Sullivan v. Boerckel, 526 U.S. 838, 842-48, 119 S. Ct. 1728, 1731-34 , 144 L. Ed. 2d 1 (1999).

When a petitioner has procedurally defaulted a claim in state court, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that

failure to consider the claim will result in a fundamental miscarriage of justice."  Coleman, 501

U.S. at 750, 111 S. Ct. at 2565.  The cause and prejudice standard applies "uniformly to all

independent and adequate state procedural defaults."  Id. at 750-51, 111 S. Ct. at 2565.

In McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991), the

United States Supreme Court described the elements a petitioner must prove in order to prevail

under the cause and prejudice exception to the procedural default rule:

> In procedural default cases, the cause standard requires the petitioner to
> show that "some objective factor external to the defense impeded counsel's
> efforts" to raise the claim in state court.  Murray v. Carrier, 477 U.S. at 488, 106
> S. Ct. at 2645.  Objective factors that constitute cause include "'interference by
> officials'" that makes compliance with the State's procedural rule impracticable,
> and "a showing that the factual or legal basis for a claim was not reasonably
> available to counsel." Ibid.  In addition, constitutionally "[i]neffective assistance
> of counsel ... is cause." Ibid.  Attorney error short of ineffective assistance of
> counsel, however, does not constitute cause and will not excuse a procedural
> default. Id. at 486-488, 106 S. Ct. at 2644-45.  Once the petitioner has established
> cause, he must show "'actual prejudice' resulting from the errors of which he
> complains."  United States v. Frady, 456 U.S. 152, 168, 102 S. Ct. 1584, 1594, 71
> L. Ed. 2d 816 (1982).

Id. at 493-94, 111 S. Ct. at 1470.

The Alabama Court of Criminal Appeals concluded that petitioner's claim that the trial

court was without jurisdiction to enhance petitioner's sentence to life without the possibility of

parole under the Alabama Habitual Offenders Felony Act when the state failed to present and/or

admit certified copies of prior convictions to be accepted into evidence by the trial court at

sentencing (Claim 4) and claim that he was deprived of due process because the pre-sentencing

report was improperly prepared with outdated and false information (Claim 5) were non-

jurisdictional claims and were procedurally barred under Rule 32 of the Alabama Rules of

Criminal Procedure. [6]

Petitioner has failed to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. Accordingly, petitioner's Claims 4 and 5 are due to be denied.

In sum, with respect to petitioner's habeas claims 1, 2, 3, 6, 7 and 8, which were each considered by the Alabama Court of Criminal Appeals and denied on the merits, the Court finds that petitioner has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law as set forth in Supreme Court case law or that the court decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts. Likewise, petitioner has failed to establish under the "unreasonable application" clause that the state court, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case. Thus, petitioner has not established that he is

---

[6] Rule 32.2 of the Alabama Rules of Criminal Procedure, entitled "Preclusion of Remedy" provides, in pertinent part:

(a) Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:

(3) Which could have been but was not raised at trial, unless the ground for relief arises under Rule 32.1(b); or

(5) Which could have been but was not raised on appeal, unless the ground for relief arises under Rule 32.1(b).

Ala. R. Crim. P. 32.2.

entitled to relief under § 2254(d)(1).  In addition, petitioner has failed to establish entitlement to relief under § 2254(d)(2) by showing that the decision of the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court must presume as correct the determinations of all factual issues made by the state court.  28 U.S.C. § 2254(e).  Petitioner has not rebutted that presumption of correctness by clear and convincing evidence.

The undersigned further concludes that petitioner's Claims 4 and 5 are non-jurisdictional claims.  Moreover, the claims are procedurally defaulted pursuant to Rule 32 of the Alabama Rules of Civil Procedure and petitioner has failed to demonstrate cause and prejudice as a result.

## **CONCLUSION**

Based on the foregoing, the undersigned Magistrate Judge is of the opinion that petitioner's rights were not violated and that his request for habeas corpus relief should be denied.  It is so recommended.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 21st day of December, 2005.

 s / Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.    **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.